IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TYRESE QUINN                                                               PLAINTIFF

V.                                   CIVIL ACTION NO. 1:21-CV-162-SA-DAS

WEBSTER COUNTY, MISSISSIPPI, et al.                         DEFENDANTS

ORDER AND MEMORANDUM OPINION

On October 26, 2021, Tyrese Quinn initiated this lawsuit by filing his Complaint [1]. Quinn's claims against some of the original Defendants have been resolved. The remaining Defendants are Webster County, Mississippi; Sheriff David Gore (in his official capacity); and Sheriff's Deputy Jacob Edwards (in his official and individual capacity). On January 9, 2023, the Defendants filed a Motion for Summary Judgment [65], seeking dismissal of all claims. The Motion [65] has been fully briefed and is now ripe for review.

*Relevant Background*

The events pertinent to this lawsuit occurred during the early morning hours of August 8, 2020, at the Webster County Jail. At some point after midnight, officers of the City of Eupora Police Department arrested Quinn for public drunkenness and disorderly conduct and transported him to the Webster County Jail.

Upon arrival at the Jail, Quinn was taken to the booking area. Multiple officers came in and out of the booking area while Quinn was waiting to be booked. One officer—Officer David Fonseca—was wearing a body cam, the video from which was attached to the Defendants' Motion [65]. The body cam video is approximately twelve minutes long. It was 2:08 A.M. at the beginning of the video, but it is unclear how long Quinn had been in the booking area prior to the start of the video.

At the beginning of the video, Quinn was seated on a bench. While in the booking area, Quinn conversed with multiple officers. For the first approximately five minutes of the video, Quinn was the only individual waiting to be booked. During this time, Quinn, who was in handcuffs, acted in a manner consistent with being intoxicated. But, other than Quinn having to be told to sit down two different times, nothing significant occurred. At 2:13 A.M., two other individuals entered the booking area in handcuffs, and another officer entered with them.

At 2:15 A.M., Quinn began to become increasingly agitated and aggressive and began using profanities. Deputy Edwards came into the booking area at that time. Quinn stood up, and Deputy Edwards pushed him back down onto the bench where Quinn had been sitting. Deputy Edwards and Quinn raised their voices at each other. Another officer intervened and directed Quinn to remain seated. Quinn continued to yell profanities.

At 2:17 A.M., Deputy Edwards walked Quinn out of the booking area and took him to a cell. Officer Fonseca followed. While Deputy Edwards was unlocking the cell door, Quinn continued yelling—some of which was incoherent and some of which included profanities. After placing Quinn in the cell, Deputy Edwards removed the handcuffs from Quinn's hands. Deputy Edwards asked Officer Fonseca what time it was, and after being advised that it was 2:18 A.M., Deputy Edwards told Quinn that he was going "to have to cut all this out"—referring to Quinn's yelling. Then, Quinn said that he was "good" and attempted to shake Deputy Edwards' hand. Deputy Edwards declined the offered handshake and left the cell.

As Deputy Edwards was closing the cell door to leave, Quinn called him a "bitch." At this point, things escalated. Deputy Edwards then opened the cell door and began to re-enter the cell. Quinn said "yeah, come back in." A fight ensued. Quinn appeared to throw the first punch (and, in his deposition, did not deny throwing the first punch), and Deputy Edwards responded by

2

punching Quinn multiple times and forcing him back onto the bench in the holding cell. During the altercation, Officer Fonseca tased Quinn. Approximately thirty seconds elapsed between the first punch and the last punch. At the end of the altercation, Quinn was laying across the bench in the holding cell and not offering any resistance.

As Deputy Edwards walked away, he said: "You got the wrong mother fucker. I promise you that. I'll swell your shit up in a heartbeat." Officer Fonseca asked Quinn if he was alright and, after Quinn said that he was, the officers locked the cell and left. As they walked away, Deputy Edwards said: "Yeah, I did that shit. Remember that."

Although the reasons why Quinn did not receive medical attention at that time are disputed, it is undisputed that Quinn did not receive any medical attention until around 10:30 A.M.—approximately eight hours after the altercation. Quinn contends that he suffered "severe eye trauma" and "scrapes and bruising." [73] at p. 4.

Quinn filed this lawsuit on October 26, 2021. He initially named the City of Eupora, Mississippi, and Eupora Police Chief Gregg Hunter as Defendants. However, on December 2, 2022, this Court entered an Agreed Rule 54(b) Judgment of Dismissal [61] as to those parties pursuant to a confidential settlement.

The remaining Defendants are Webster County, Sheriff Gore, and Deputy Edwards. Concerning those Defendants, Quinn's Complaint [1] asserts Section 1983 claims for violations of federal due process, equal protection, excessive force, and cruel and unusual punishment. He asserts municipal liability claims under *Monell* against Webster County and Sheriff Gore, as well as supervisory liability claims against Sheriff Gore. He also asserts various state law claims.[1]

---

[1] Although not set forth as a separate claim, Quinn's Complaint [1] makes one reference to a conspiracy between the Defendants. The Defendants sought summary judgment on that claim, and Quinn specifically withdrew the claim in his Response Memorandum [73]. Thus, to the extent that Quinn's Complaint [1] asserted a conspiracy claim, that claim is hereby DISMISSED.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As previously noted, Quinn has asserted federal and state law claims. The Court will address the claims in turn.

I. *Federal Claims*

While he asserts different theories of liability, such as individual liability, supervisory liability, and *Monell* liability, Quinn's federal claims can substantively be narrowed into two categories—(1) excessive force and (2) denial of medical care.

A. *Section 1983 Claims – Generally*

"Regarding Section 1983, the United States Supreme Court has held that the statute's 'very purpose . . . was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action *under color of state law*.'" *Alexander v. McAdams*, 2017 WL 5642328, at *3 (N.D. Miss. Apr. 18, 2017) (quoting *Mitchum v. Foster*, 407 U.S. 225, 242, 92 S. Ct. 2151, L. Ed. 2d 705 (1972)) (emphasis in original). In order to state a claim under Section 1983, a plaintiff must "(1) allege he has been deprived of a right secured by the United States Constitution or the laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law." *Weeks v. Thompson*, 2007 WL 316261, at *2 (N.D. Miss. Jan. 31, 2007) (citing *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)).

There is no debate that different standards are applicable to a Section 1983 claim against a municipality and an individual capacity claim against a law enforcement officer. *See Weeks*, 2007 WL 316261 at *2 ("Municipal liability under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom."); *Mangieri v. Clifton*, 29 F.3d 1012 (5th Cir. 1994) (holding that law enforcement officers are entitled to qualified immunity "unless it is shown that, at the time of the incident, [the officer] violated a clearly established constitutional right."). However, regardless of whether a plaintiff seeks to impose liability against a municipality or against an individual law enforcement officer,

the plaintiff must establish a constitutional violation. *See Thompson v. Beasley*, 309 F.R.D. 236, 249-50 (N.D. Miss. 2015). In other words, if Quinn cannot establish a question of fact as to a constitutional violation, he cannot prevail on any of his Section 1983 claims against any Defendant. The Court will consequently first analyze whether he can survive summary judgment as to the existence of a constitutional violation.

  B. *Excessive Force*

In his Complaint [1], Quinn contends that Deputy Edwards exhibited excessive force on two occasions—(1) when he allegedly forced Quinn's forehead into the cell bars; and (2) during the altercation described above in the holding cell. *See* [1] at p. 6 (alleging that Deputy Edwards "used excessive physical force when he threw Plaintiff's forehead into the cell bars *and* continued beating him within the cell.") (emphasis added).

As to his forehead allegedly being forced into the cell bars, the timing as to when Quinn contends this force was exhibited upon him is unclear. In the Complaint [1], he avers that "[u]pon arrival to the County Jail and prior to entering the cell, [his] forehead was thrown against the bars of the jail cell." [1] at p. 4. While his contention is clearly that it occurred prior to entering the cell, the allegation provides no further context as to when it happened. The Court carefully reviewed the body cam video and did not observe Quinn's forehead being forced into the cell bars at any time. In their supporting Memorandum [66], the Defendants contend that this allegation originated from another unidentified detainee in the Jail.

In his Response Memorandum [73], Quinn does not address this contention at all—instead expending his efforts briefing the altercation between Deputy Edwards and Quinn in the holding cell. This Court has time and again held that a party's failure to respond to a properly supported summary judgment argument constitutes an abandonment of that particular claim. *See*, *e.g.*,

6

*Tubwell v. Specialized Loan Serv., LLC*, 2019 WL 1446362, at *3 (N.D. Miss. Mar. 29, 2012) (noting that the non-movant's failure to respond to the moving party's motion for summary judgment on certain claims "amounts to an abandonment of [those] claims"); *see also Scott v. Spencer Gifts, LLC*, 2015 WL 4205242, at *1 (N.D. Miss. July 10, 2015) ("In their response, Plaintiffs have made no argument and offered no proof in support of their claims of intentional infliction of emotional distress and failure to train or supervise, and thus the Court finds these theories to be abandoned."); *Sanders v. Sailormen, Inc.*, 2012 WL 663021, at *3 (N.D. Miss. Feb. 28, 2012) (collecting cases) ("Failure to address a claim results in the abandonment thereof.").

Taking all of this into account, including Quinn's failure to provide any clarity as to the allegation, his failure to respond to the Defendants' argument, and the fact that the video does not show Quinn's forehead being forced into the cell bars, the Court finds the Defendants' request for dismissal of that portion of Quinn's excessive force claim to be well-taken. To the extent the present Motion [65] seeks dismissal of that particular aspect of Quinn's excessive force claim, it is GRANTED.

The Court now turns to the crux of Quinn's excessive force claim—the altercation in the holding cell. Quinn asserts this claim under both the Fourth Amendment and the Fourteenth Amendment. Specifically, he alleges:

> 26. Defendant Deputy Edwards, while acting under the color of law, used excessive physical force when he . . . continued beating him within the cell. This act was unconstitutional in violation of Plaintiff's 5th and 14th Amendment Rights and objectively [un]reasonable.
>
> 27. Force is excessive, and therefore violates the 4th Amendment, if it is not reasonable considering the circumstances facing the officer. . . The facts and circumstances of this case show that at the time of the incident, Deputy Edwards was under color of law; therefore his actions were excessive and unreasonable.

7

[1] at p. 6.

The Fourth Amendment protects an individual's right to be free from excessive force during a seizure. *See Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). However, "[w]hile the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455-56 (5th Cir. 1994); *Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993)); *see also Evern v. Chisolm*, 2018 WL 4440878, at *3 (S.D. Miss. Sept. 17, 2018) (citing *Gutierrez* for the proposition that "post-arrest claims by pre-trial detainees in state custody fall under the Fourteenth Amendment."). To that end, "[t]he Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial." *Alanis v. City of Brownsville*, 2018 WL 11183788, at *5 (S.D. Tex. June 7, 2018) (quoting *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996)).

Thus, while an individual is protected by either the Fourth *or* Fourteenth Amendment, he is not simultaneously protected by both. Despite this, the parties did not address this distinction whatsoever in their filings. Instead, they simply made their respective arguments as to both the Fourth Amendment and the Fourteenth Amendment. While the Court has no concern with Quinn initially pleading both claims in his Complaint [1] at the commencement of this proceeding, that approach is insufficient at the summary judgment stage. Discovery has occurred and is now completed.

While it is oftentimes not disputed, "the point at which an arrest ends and pretrial detainment begins is not always clear[.]" *Id*. (citing *Valencia*, 981 F.2d at 1449 n. 44). "Since the Fourth Amendment protects against unreasonable seizures, it seems primarily directed to the initial

act of restraining an individual's liberty, such as an investigatory stop or arrest, but the Fifth Circuit has consistently held that its protection does not end the moment the police gain custody and control over a suspect." *Id*. (quoting *Valencia*, 981 F.2d at 1443-44) (quotation marks omitted). Other district courts have gleaned some guidance from various Fifth Circuit opinions on this issue:

> [T]he Fifth Circuit has held that the Fourth Amendment does not protect against deliberate uses of force that occur '*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.' It is only after these three circumstances occur that an arrestee, who was protected from excessive force under the Fourth Amendment, becomes a pretrial detainee who is protected under the Fourteenth Amendment.

*Jones v. McIntosh*, 2016 WL 4430481, at *5 (E.D. Tex. Aug. 22, 2016) (quoting *Valencia*, 981 F.2d at 1443) (emphasis in original).

The Court finds that additional briefing on this issue is warranted so that the Court can be apprised of the parties' respective positions as to the applicability of the Fourth Amendment or Fourteenth Amendment. Specifically, the parties should set forth their respective positions as to whether they believe the Fourth Amendment or the Fourteenth Amendment is applicable.

The parties shall have fourteen (14) days from today's date to file a Memorandum setting forth their position on this issue. The Court will take up that issue in a separate filing once the parties file their respective Memoranda.

C.    *Denial of Medical Care*

Quinn also alleges that the Defendants ignored his requests for medical assistance in violation of his Fourteenth Amendment rights. Specifically, his Complaint [1] avers that the Defendants "ignored [his] request for medical assistance . . . allowing him to suffer in excruciating pain without providing medical assistance[.]" [1] at p. 6.

9

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The Due Process Clause applies to a pretrial detainee's claim of denial of medical care." *Irvin v. Prentiss Cnty., Miss.*, 2021 WL 277808, at *4 (N.D. Miss. Jan. 27, 2021) (citing *Nickols v. Morris*, 705 F. Supp. 2d 579, 591 (N.D. Tex. 2010)) (additional citations omitted).

"The Fifth Circuit has established that the 'deliberate indifference' standard applies to a pretrial detainee's claims involving the denial of medical care under § 1983." *Id*. (quoting *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 697 (N.D. Tex. 2019)) (additional citation omitted). To act with deliberate indifference, an officer "must consciously disregard a known and excessive risk to the victim's health and safety." *Id*. (quoting *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004)). The requisite standard for a deliberate indifference claim is "an extremely high one." *Id*. (quoting *Self*, 369 F. Supp. 3d at 697). To prevail, "a plaintiff must show that the defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id*. (quoting *Jones v. Rainey*, 2020 WL 5995688, at *1 (S.D. Miss. Oct. 9, 2020)); *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)).

At this juncture, the Court notes that the above-referenced cases refer to the applicable standard as it relates to a pretrial detainee. The Court has not yet made a determination as to whether Quinn was a pretrial detainee or an arrestee. But for purposes of the denial of medical care claim, this is a distinction without a difference. The Fifth Circuit has explicitly held that "[a]n arrestee's complaint for denial of substantive due process and a pretrial detainee's complaint for denial of substantive due process are evaluated under the same standards." *Nerren v. Livingston*

*Police Dept.*, 86 F.3d 469, 472 (5th Cir. 1996). Consistent with this authority, the District Court for the Northern District of Texas has recently noted that "[t]he Fourteenth Amendment guarantees *arrestees* the right 'not to have their serious medical needs met with deliberate indifference on the part of the confining officials.'" *Brooks v. Taylor Cnty.*, 592 F. Supp. 3d 550, 556 (N.D. Tex. 2022) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)); citing *Nerren*, 86 F.3d at 472) (additional citations omitted, emphasis added).

Having clarified that issue, the Court turns to the substance of Quinn's claim. In their filings, the Defendants cite a portion of Deputy Edwards' transcript wherein he testified about the lack of medical treatment Quinn received on the night in question:

> Q. And after you beat the man to a pulp, did you call for medical attention that night?
>
> MR. DAMBRINO: Object to the form of the question.
>
> A. I asked Mr. Quinn if he wanted medical attention. He stated – if I can recall correctly, he said he was fine. I then advised the jailer to check on Mr. Quinn every 30 minutes just in case.
>
> Q. My question was: Did you call for medical attention that night?
>
> A. No.
>
> Q. And as [a] law enforcement officer, when you have knowledge of someone who is injured, you're supposed to call. Regardless of what they say, you're supposed to call – especially if you did the damage, you're supposed to call for medical assistance.
>
> A. It depends on injuries.
>
> . . .
>
> Q. What was the reason for your failure to call someone?
>
> A. Mr. Quinn stated that he was fine.

11

>   Q. And you knew Mr. Quinn –
>
>   A. He actually refused medical. And that's when I told the jailer to keep an eye on him every thirty minutes.

[65], Ex. 3 at p. 33-35.

Although not addressed in Deputy Edwards' deposition, Quinn was taken to the hospital the following morning around 10:30 A.M.—approximately eight hours after the altercation.

As Deputy Edwards' testimony makes clear, his position is that he specifically asked Quinn if he needed medical attention and Quinn declined. The time when this conversation occurred is unclear. Nevertheless, Deputy Edwards also testified that, in response to Quinn's refusal and considering his condition at that time, he advised the jailer to check on Quinn every thirty minutes.

Quinn's Fourteenth Amendment section of his Memorandum [73] spans approximately three pages—most of which addresses the excessive nature of the force exhibited upon him. As to the denial of medical care, Quinn's *entire* argument spans three sentences and is as follows:

> Alarmingly, in spite of Webster County policy, there appears to be no evidence that any Webster County employees, including Deputy Edwards, requested medical examination of Tyrese Quinn following the violent attack. A reasonable official would have understood that what he was doing violates one's rights and he was placing a citizen in great peril. Defendant Deputy Edwards' indifference speaks volumes and demonstrates a total lack of reasonableness and regard for Mr. Quinn's constitutional rights.

[73] at p. 12.[2]

Notably, Quinn cites *no* evidence to support his position. He does not rebut Deputy Edwards' testimony as to the conduct in which he engaged. And even if his position is that Deputy Edwards should have done more—such as getting medical treatment for Quinn immediately—

---

[2] In another section of his Memorandum [73], Quinn argues that "[d]espite being an arrestee on the charge of public drunkenness and disorderly conduct, Defendants chose to delay medical treatment . . ." [73] at p. 14. He still cites no evidence in support of this contention.

Quinn has not in any way articulated, or pointed to any evidence indicating, that Deputy Edwards acted with deliberate indifference. Furthermore, Quinn has failed to even expound upon his injuries or explain why medical attention was needed immediately. He has provided the Court with nothing to support this claim other than conclusory statements in his Memorandum [73]. And the Court bears no obligation to sift through the entire record to locate evidence to support a non-moving party's position. *See*, *e.g.*, *Head v. Smith*, 2021 WL 4168390, at *2 (E.D. La. Sept. 2021) (noting that the district court has "has no duty to survey the entire record in search of evidence to support a non-movant's position") (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)) (additional citations omitted).

The requisite for deliberate indifference is "extremely high[.]" *Irvin*, 2021 WL 277808 at *4 (citations omitted). Quinn has not come close to meeting such an onerous burden.

To the extent the Defendants' Motion [65] seeks dismissal of Quinn's denial of medical care claim, it is GRANTED. That claim is hereby DISMISSED.

II. State Law Claims

As to Webster County and Sheriff Gore, Quinn asserts a state law claim for negligent training, supervision, and retention. As to all Defendants, he asserts claims for assault, battery, intentional and/or negligent infliction of emotional distress, and reckless disregard.[3]

At the outset, the Court dismisses Quinn's reckless disregard claim because "Mississippi does not recognize reckless disregard as an independent tort." *Hodges v. Allstate Ins. Co.*, 2022 WL 766452, at *4 (S.D. Miss. Mar. 11, 2022). To the extent Quinn may take the position that Deputy Edwards' alleged reckless disregard constitutes support for his punitive damages claim,

---

[3] Candidly, Quinn's Complaint [1] is unclear as to whether he asserts his assault, battery, infliction of emotional distress, and reckless disregard claims against all remaining Defendants or only Deputy Edwards. However, as will be addressed more fully hereinafter, the outcome would not change regardless.

13

the Court passes no judgment at this time. But to the extent it is asserted as a separate independent cause of action, it is hereby DISMISSED.

Having resolved that preliminary issue, the Court turns to Quinn's other state law claims. "[T]he MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability." *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006) (citing MISS. CODE ANN. § 11-46-7(1)). The Act specifically states that the remedies which it provides are "exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee . . . for the act or omission which gave rise to the claim or suit." MISS. CODE ANN. § 11-46-7(1). Substantively, the Act shields governmental employees acting within the course and scope of their employment from individual liability, specifically providing:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties.

*Id*. at § 11-46-7(2).

However, the Act itself is clear that the "waiver of sovereign immunity only applies to a governmental entity and its employees acting *within the course and scope of their employment or duties*." *Thomas v. City of Laurel, Miss.*, 2021 WL 1148470, at *8 (S.D. Miss. Mar. 25, 2021) (quoting Miss. Code Ann. § 11-46-9(1)) (emphasis added; quotation marks omitted). Further on this point:

> For the purposes of the MTCA, "an employee shall *not* be considered as acting within the course and scope of his employment and a governmental entity shall *not* be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations."

> Miss. Code Ann. § 11-46-5(2). This carve-out from the definitions of actions "within the course and scope" of government employment encompasses claims of intentional infliction of emotional distress, assault, and battery. Therefore, the police-function exemption from the MTCA's waiver of sovereign immunity does not apply to them.

*Id*. at *8 (emphasis added).

Stated another way, "[b]y definition, a government employee is not acting within the course and scope of his employment if his conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations . . . [B]oth assault and battery constitute some form of malice or criminal offense." *Brown v. Wilkinson Cnty. Sheriff's Dept.*, 2017 WL 1479428, at *9 (S.D. Miss. Apr. 24, 2017) (internal citations and quotation marks omitted).

Relying on these authorities, to the extent Quinn's claims for assault, battery, and intentional infliction of emotional distress are directed toward Webster County, Sheriff Gore (in his official capacity), and Deputy Edwards (in his official capacity), they must be dismissed because those claims, by their very nature, allege that Deputy Edwards was not acting within the course and scope of his employment.[4] Therefore, the MTCA's waiver of sovereign immunity is inapplicable. *See Thomas*, 2021 WL 1148470 at *8. Quinn's assault, battery, and intentional infliction of emotion distress claims against Webster County, Sheriff Gore (in his official capacity), and Deputy Edwards (in his official capacity) are hereby DISMISSED.

The Court now considers those same claims to the extent they are asserted against Deputy Edwards in his individual capacity. In their Memorandum [66], the Defendants contend that these claims should be dismissed pursuant to the MTCA's police protection exemption and the inmate

---

[4] The Court treats the official capacity claims synonymous to the claims against the County pursuant to well settled authority. *See*, *e.g.*, *Pugh v. Byrd*, 574 F. App'x 505, 511 (5th Cir. 2014) ("When an employee of a governmental entity is sued in his or her official capacity, this represents only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (quotation marks omitted).

15

exception. However, as emphasized above, these claims fall outside of the scope of the MTCA—therefore, these exemptions provide Deputy Edwards no cover as to the individual capacity claims. *See*, *e.g.*, *Thomas*, 2021 WL 1148470 at *8. Because the only arguments the Defendants raised for dismissal were based upon those exemptions (which are inapplicable), their request, as it pertains to those particular claims, is DENIED. Quinn will be permitted to proceed to trial on his individual capacity claims for assault, battery, and intentional infliction of emotional distress against Deputy Edwards.

That leaves only the negligence claims—negligent training, retention, and supervision and negligent infliction of emotional distress. As with the other claims, the Defendants raise the police protection exemption and the inmate exemption. The statutory language relating to those two exemptions provides as follows:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed[.]

MISS. CODE ANN. § 11-46-9(1)(c), (m).

Because it is dispositive, the Court turns directly to the inmate exemption. The Mississippi Supreme Court has previously explained the exemption's expansive reach:

> In the Tort Claims Act, the Mississippi Legislature provided for an exemption from the government's liability for claims made by inmates. Unlike other states with similar statutes, no exceptions, restrictions or distinctions were made to allow an inmate to bring a claim against a governmental entity. . . *The Legislature expressly stated the governmental entity would be immune from all liability from any claim of any claimant who was an inmate at the time the claim arose.* Therefore, by the express language of the statute, Wallace, as an inmate of the Department of Corrections, is barred from brining any claim against the Town of Raleigh.

*Wallace v. Town of Raleigh*, 815 So.2d 1203, 1207-08 (Miss. 2002) (emphasis added).

Although Quinn was not a convicted inmate at the time of the alleged wrongful conduct, the Mississippi Supreme Court has previously rejected attempts to distinguish between convicted inmates and individuals who are simply in custody. *See*, *e.g.*, *Hinds Cnty. v. Burton*, 187 So.3d 1016, 1024 (Miss. 2016) ("Burton's position is essentially that his claims arose at a time when he was not an inmate but was in the process of being booked. We have previously rejected a similar argument.") (citations omitted); *see also Fleming v. Tunica Cnty., Miss.*, 497 F. App'x 381, 389 (5th Cir. 2012) (noting that the exemption makes no distinction based upon whether an individual has been convicted).

Consequently, the Court finds that, since Quinn was in custody at the time of the alleged wrongful conduct, his negligence claims are barred by the MTCA. Quinn's negligent training, retention, and supervision claim and his negligent infliction of emotional distress claim are hereby DISMISSED.

*Conclusion*

For the reasons set forth above, Quinn's excessive force claim concerning his head being hit against the cell bars, his denial of medical care claim, and his conspiracy claim are hereby

17

DISMISSED *with prejudice*. His state law claims against Webster County, Sheriff Gore (in his official capacity), and Deputy Edwards (in his official capacity) are likewise DISMISSED *with prejudice*. Quinn will be permitted to proceed to trial on his individual capacity state law claims against Deputy Edwards for assault, battery, and intentional infliction of emotional distress.

The Court will resolve the remaining claims once the parties file their respective Memoranda, consistent with the directive set forth above.

SO ORDERED, this the 30th day of March, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE